19-1524. Mr. Hastings, you have reserved four minutes of your time. Is that correct? Yes, Your Honor. Okay. We're ready for you. May it please the Court. The District Court erred by relying upon extrinsic evidence to construe Claim 21 of the 568 patent when the language of the patent is clear and unambiguous when the claims are read in light of the specification. Claim 21 is not indefinite. So the District Court had three reasons that it found the claim indefinite. I'm going to talk about each of those three today, which are the scoring depth of the board, whether averaging should be used, and the conversion method of board thickness. And hopefully with the time today I'll be able to show that each of these alleged uncertainties is addressed with reasonable certainty in the patent and more than sufficient to show that the patent is not indefinite. So I'll start with the first issue, which is the District Court finding Claim 21 to be indefinite because of alleged uncertainty about how deep to score the gypsum wall board when assessing. As the Court knows from reading the briefs and the claim language, the claim requires a scored flexural strength of laminated structure of about 22 pounds per half inch thickness of the structure. But the claim goes on to define what flexural strength is or scored flexural strength is. Scored flexural strength is a scored board. Certainty came to the District Court with an expert, with Miller, to say depth matters. The problem with their argument is the claim answers this question. The plain language of the claim says the scored flexural strength being the flexural strength of the laminated structure, and here's the key words, after the outer paper clad surface of one of the first and second boards has been scored. So are you arguing that all you have to do is score or get the knife through the paper and that's enough? Exactly, Your Honor. And that is the plain meaning of the word score. But that's not what this claim says. Your Honor, the claim says to score the outer clad, paper clad surface. And Certainty's expert at page 666 of the appendix even acknowledges what score means. It means cutting through the paper. To put it in context, the way So in your view, you don't have to cut into the gypsum at all? That's correct. And that's the way the gypsum boards work. The gypsum itself is a relatively fragile structure. If it's not supported, the laminated outside paper is what gives it the support. And it's cutting the paper, which is what removes the support, to allow it to be snapped and scored. Which of Miller's scoring depths correspond to cutting all the way through the paper? Is it 0.5, 1.5, 2.5, 3.5, or 4.5 millimeters? Theoretically, Your Honor, it's any of them as long as the paper has been scored. Now the 4.5 has a problem because he admitted himself that it took multiple cuts to get to that depth. Scoring simply means taking the knife and scoring to cut through the outer clad, paper clad surface. Once the paper clad surface has been scored, the board is capable of being snapped. And if you look at the results, even under Miller's, when they're actually averaged, and I'm going to come back to averaging in just a second, when they're actually averaged, they're all in the same general range. The whole purpose of the invention was to have, to explain how it is that the board could have enough stability to be transported, which is how you have the outer paper clad surfaces, but then also be able to function with the installation method being the score and snap. It was already known in the art to have a double gypsum layer surrounded on the outer sides by paper cladding? Your Honor, we do not believe that is correct. To overcome a rejection, where that was asserted, that's where you came in with this interesting inherent property of your claim invention, of having a certain strength value, once the paper is scored. Yes, Your Honor. The strength value was inserted into the claims during the prosecution process to overcome some objections. So, for infringement purposes, are you suing people that make the boards, or are you suing the people after somebody later on down the line scores the board? It's the people that make the board, Your Honor. They're making the infringement. So, as soon as the board is made, it inherently has this property after it's been scored? Yes, and so the board is made, the scoring is to talk about the strength of the board for purposes of manufacturing it. And so, you have to manufacture it at a strength that is sturdy enough to be able to be transported and to be able to use gypsum. I understand that, but I guess the problem is Dr. Miller ran a lot of tests. Did your expert run any tests? No. Okay, so Dr. Miller ran a lot of tests. Yes. And, you know, I see them at A339, A340, and he does a lot of different scoring depths, he does a lot of different test positions and directions, face up, face down, etc. And he does different conversion methods, the PSI and the linear extrapolation. And then he shows that the results of his tests have strength values that are all over the place. You know, some would arguably infringe the about 22 pounds, and then others, really, there's just no reasonable way you could say it would. And so that, I guess, obviously made the district judge nervous, and it also makes me wonder if you have these wildly different strength values, how can we say that there's really any predictability here? And, Your Honor, there's multiple points in your question, as I think you know. The problem, the fundamental problem, and I am going to talk about the averaging and his results and the conversion method, but the fundamental problem is we have the classic case of a party bringing in an expert to create uncertainty when the patent language, read in light of the specifications, has no uncertainty. So I've talked about SCORD. Our position is that the answer to SCORD is actually in the claim itself. It's cut the paper at page 666 of the transcript. Miller agrees with that. The second issue gets to averaging, and this is where Your Honor's question comes up, which the results, if you look at his data plots, he plotted every data point with no averaging. Well, that recognizes that there are uncertainties in the process. In the manufacturing, there could be different strengths of a board. There could be differences in how someone cuts a board, and that can result in… And that's exactly where I'm going, Your Honor, because the 473 standard tells you exactly how to run the test. You run it all four ways, and at paragraph 110 of Miller's report, he even acknowledges the critical point that I don't think the district court understood. The score line is always down. So you run the four results, face up, face down, parallel, perpendicular, but you always score the bottom of the board with the load coming on top. The test tells us to run four methods. The 473 standard itself says to test multiple boards, which Miller did. But here's what he didn't do. The other part of what the 473 standard tells us to do, which is average the results. So, Your Honor, this is on page 701 of the appendix. It's about halfway down on the left side of the 473 standard. When you use multiple boards, it tells you to average the results. Now, as the 473 standard says, you're averaging… Could you show me where on the left-hand column of A701? Yes, Your Honor. It's the left-hand column. It's the section right below the diagrams that says reports. What it says is, and I want to be clear about this because I need to come back to the problem of four versus one, which is important as well. What it says is when you have the multiple specimens, the multiple boards, you average the results. So, the perpendicular face-up version. If you test three boards, you average the results. That's what the 473 tells us to do. So you get, from running the test, no matter how many boards you run, you get four results. Miller didn't do that. He didn't average anything, okay? So that's the first problem with his data points everywhere. He never averaged the results from the multiple boards. Are you saying he didn't average all of the 0.5 millimeter parallel face-up boards? Yes, because his data points are literally plotting each number he got as opposed to averaging the multiple boards, which the specification tells us to do. But are you saying that this page of the joint appendix is telling you to not only average the values for each of the multiple samples that are tested parallel face-up, but it's also telling you to average parallel face-up with parallel face-down, perpendicular face-up. It is not. It is not, Your Honor, which is the next step of the analysis, which the specification tells us, look to the standard for how to do the test. It results in four values, no matter how many boards were used, four values averaged of each four method. Then you look at the specification of the patent. Figure 3 is very important. It shows the four values averaged. Figure 4 is important. It shows the four values from various types of boards averaged. When you say the four values, the four values is what? The four values that are resulting from the 473 test. Yes, but are they parallel face-up, parallel face-down, perpendicular face-up, or perpendicular face-down? One each, just like the standard tells us. How do I know that the four samples, H1-H4, are each the same sample board measured four different ways? It's not the same sample board. It's the same test result. It's the same test result, Your Honor. So what the 473 standard tells us… I'm lost. Yes, Your Honor. H1 represents what to you as compared to H2? The specification does not tell us which one of the one through the four matches which perpendicular parallel. What we do know is it was done using the 473 test. The 473 test results in four numbers. One for perpendicular face-up, one for perpendicular face-down. One parallel face-up, one parallel face-down. So it gives us four numbers. We have four numbers. So those are four numbers, and which one of those four numbers represents the 24.1 for H1? I don't know the answer to that question, Your Honor. It's not disclosed in the specification. But what is disclosed is we have four numbers from the test method, four numbers reported in the specification that are then averaged. It's also figure three, figure four. Column six uses the word average talking about flexural strength three different times. That's how the disclosure is being made. It is being made that this is an average. There's nothing to the contrary. Miller never did that. There's no language to the contrary. Did the ASTM standard ever test for the score depth? No, Your Honor. Now, one thing before I run out. Has anybody ever tested for the scored flexural strength then? This was a new method that had to be used for this particular product, which is why it's defined as to how you do it. What I was asking was whether anybody ever tested that. I think the answer would be no, right? Your Honor, it's not in the record. That's the best I can do is it's not in the record. So the question that leaps out to me is how does somebody skilled in art know how deep to score? The answer is in claim 21. You cut the paper. That's it. Once the paper's been cut, any difference in depth, according to Miller, just makes it easier to break. Well, the whole purpose of this is to make a board that's easy to break once it's scored. Your Honor, before I run out of time, I do need to talk about. You are in your rebuttal time right now. Thank you, Your Honor. I do have one quick point I need to make about conversion methods because I know there's a lot of briefing on that. The conversion method is expressly addressed in claim 21 as well. It says 22 pounds per half inch thickness. That word per is getting overlooked in the briefing. Per, according to Black's Law Dictionary, Webster's Random House means for each or for every. If you go 55 miles an hour, you've gone 55 miles per hour. It's 50 miles per hour each hour. It's the same thing for half inch thickness. They're ignoring this standard. The plain language tells us it's a linear conversion. The other problem Miller has, he's trying to make this a square inch, pounds per square inch conversion. There's nothing in any of the documents, the patent, the claims, that talks about a square inch. It's an inch of thickness. He's trying to change the patent language by using expert testimony. And from this court's precedent, that's not appropriate. Thank you, Your Honor. Okay. Let's hear it from the other side. Mr. Moore. Thank you, Your Honor. Good morning. Judge Koh correctly decided that claim 21 of the 568 patent is indefinite for three separate and independent reasons, each of which is supported by multiple fact findings that must be reviewed for clear error, and each of which is supported by Dr. Miller's extensive testimony and test results. First, Judge Koh correctly concluded as a factual matter that scored flexural strength can be measured multiple ways because it can be measured at multiple score depths, and that those multiple score depths lead to different results. Did Dr. Miller agree that for scoring depth, all that is required is cutting through the paper? No. He agreed that scoring, when used outside the term scored flexural strength, scoring generally means cutting a groove with a sharp instrument. But when you put scoring and scored in the context of this new coined term, scored flexural strength, then you need to know how deep you measure. Okay. The other side says Dr. Miller conceded that all we need to understand, according to the claim language for scoring, is just cutting through the paper. That's not correct. Dr. Miller's report goes on at length to explain how score depth, he actually goes on at length to show all the different factors that would impact score depth and how scoring can vary from installer to installer and time of day and all the different ways you can do it, and that's in the joint appendix at page A19 through A21, particularly paragraph 50. He also goes on at length in his expert declaration to explain how the test results vary based on how deep you scored. And he explains that in multiple places in his report, but at A310, A340 through 42, and A348 through 49. And it's common sense because when you look at a board, how deep I cut through that board is going to affect how much force it's going to take to break it. If I cut what Dr. Miller concludes or what Judge Koh concludes, as a matter of fact, is how deeply I cut through that board, the deeper I cut, the less force it's going to take to break. It's common sense. So when we look at the claim language, a scored flexural strength of a laminated structure is about 22 pounds per one and a half inch. What's the depth of the cut is that referring to? It's not telling you. That's the problem. That's what Judge Koh is referring to on page A20 of her report, that the claim doesn't provide you any guidance on how deep to score. Scored flexural strength was a term coined in this patent. And so from page A20 in her report to A22, she first starts by looking at the claims and says the claims don't provide any guidance how deep to score. Then she looks at the specification. The answer to that is just any time you score the paper and nothing else, that you're going to get this straight. But that's not correct. The claim language does not in any way limit the score depth. In fact, as a practical matter, when you're scoring gypsum board, it's impossible to just cut through the paper. You can't just cut through the paper and not cut into the gypsum. Because how you create gypsum is you lay down a piece of paper, then it goes down a conveyor belt and a slurry is laid over the top, and then a second piece of paper is put on the top. And that paper and that slurry adhere to each other, and they become part of one board. So it's impossible to just cut through. That's why Dr. Miller did his test results in terms of 0.5, 1.5, 2.5. Because you can't just cut through the paper, and that might vary board to board. It might vary part of the board from a different part of the board. But there's all these different factors that Dr. Miller explains in his report. So when you look at the next term, the scored flexural strength, and it's discussing—I'm looking at the claim, claim 21, the flexural strength of a laminated structure. It says after the outer paper-clad surface has been scored. I don't see that to say that only the paper. It says the outer paper-clad surface. So it seems to me to be referring to the surface of the gypsum board as a whole and not just paper. Am I missing something here? No, it doesn't specify anything about how deep to score. I would totally agree with that. And what's important here, my friend relied on the fact that it says after the paper's been scored. All the term after means is at the time following, any time after the following. If I said, what am I going to do after this hearing? It could refer to walking back to my office. It could refer to lunch. There's no limit in the claim on how deep to score. And because this is a coined test, a test that didn't exist before this patent, and the results of how deep to score directly impact whether somebody might satisfy this claim limitation, that's why Judge Coe correctly determined as a factual matter, based on the extensive testimony of Dr. Miller, that this claim was indefinite. And those findings should be reviewed for clear error. Pacific Coast did present an expert on this exact issue, but the testimony should be totally disregarded because it's conclusory, off-point, and unsupported. It's conclusory and off-point because if you look at Mr. Reisinger's declaration, he makes this one statement, minor variations in the depth of score to a gypsum panel do not materially affect the strength needed to snap a panel. He doesn't cite any test results. He doesn't do any test results. He doesn't cite any literature. He just makes the bold, unsupported conclusion. Shouldn't be given any weight. Further, all he testifies about is the strength needed to snap a panel. That's not what's at issue here. Remember, we're not talking about the strength needed to snap a panel. We're talking about a term that was coined in this patent, scored flexural strength, and whether that term, scored flexural strength, is about 21, and whether that would vary based on score depth. He doesn't provide any testimony on that at all. In fact, interestingly, his declaration doesn't even mention the ASDM standard. What about the averaging? The other side is talking about what we need to appreciate, and in his view, the district court did not appreciate, is that the exercise in trying to understand how to find the right strength value is using an averaging of a number of different calculations. First of all, averaging wouldn't affect the score depth. Score depth's an independent reason to support Judge Koh's decision. Moving to the different orientations where they propose averaging, there is no support for averaging in the claim. In fact, not only is there no support for averaging in the claim, there's no support for averaging in Pacific Coast-owned construction of these terms, or in Pacific Coast's experts' discussion of these terms. If you look at their brief on page 24, they provide their construction of these terms. They never mention average, and if it's not in the claim, and if it's not in their construction, that's conclusive of this matter. Is it in the ASTM standard where you figure out the average breaking load? What there is is an average, and that's very important. That's in the joint appendix of page A701, and it's section 11.7 of the standard. What it does in that situation, it says you take samples. You take a number of sample boards. You can take three, four, five, any number of boards. Then you sample, and you take four samples from each board, two parallel and two perpendicular. Then in 11.7, after you've taken those measurements, how you report it is you average the like results. For example, you report four different numbers. You average all the parallel face-ups, and you get a number. You average all the parallel face-downs, and you get a number. What you don't do is average parallel face-up with perpendicular face-up, and that's common sense too because if I was going to take the average height of a building in Washington, D.C., and I determine it's 14 stories, and I figure that out in feet, that number makes sense. That's a meaningful number of what the average height of a building is in D.C., but I wouldn't average the average height of a building in D.C. with the average width of a building in D.C. because when I average height and width, now I've got a meaningless number. That's like averaging parallel numbers and perpendicular numbers. There's no meaningful reason to do that. Unless the court has any further questions. No, I think we're fine. Thanks. Certainty to rest. Your Honors, what Certainty is asking for is mathematical precision on scoring depth, which this court's precedent do not require mathematical precision. As long as the paper has been cut, that's enough. How deep beyond that does not matter. Page 666 of the record, Mr. Miller was asked,   His answer, yes, that's it. Zoll, this court's decision in Zoll is important. It's a situation where some factors could No, no, Your Honor, it's been scored. If it's cut a little bit further into the board, which is likely, that doesn't matter. How deep doesn't matter. But it changes the strength, doesn't it? Not materially, Your Honor. If you look at the average results for Miller, because he refused to average it, look at the average results for Miller, page 42 of our brief, they're all within the range. So if I score a board three quarters of the way through, is it harder or easier to snap? Theoretically, it should be easier, but that wouldn't be scoring, Your Honor. Scoring is just cutting into the board, making the groove. As long as the paper's been cut, that's enough. Where do you find that definition in the specification? Your Honor, that definition You're defining the word scoring. The word score, every party in this case agreed what score meant, which is to cut the paper. I even just read Dr. Miller's testimony. The depth was the different issue. But every party agreed what scored meant, and the claim says, score the outer paper, which means cut the paper. Page 666 is the important point, Your Honor. Your representation of Dr. Miller's data points in your graph on page 42, just so I understand, you've averaged out all of his data points. Yes, Your Honor. That's correct, Your Honor. And did you use all of the values for, say, 0.5 millimeter scoring? That is all of the face-up parallel, all of the face-up perpendicular, all of the face-down, et cetera? Yes, Your Honor, we did. Okay, so you used all of those measurements. Yes, Your Honor, we did. And what we did in the graph is we kept it separate by depth, so you could see the average by depth. And then in our footnote, we went ahead and averaged the whole thing. Their averages are all within about 2-point-something pounds of what's stated. But there's nothing in the ASTM standard that says when you calculate the strength value of a board, you take all four results and average them together. It doesn't say that. The ASTM does not. Column 6 of the patent and Figure 3 and Figure 4 of the patent disclose that, Your Honor. That's where it's disclosed. Thank you, Your Honors. Okay, thank you. We thank the parties for their argument. Our next case is Horkamore, LLC v. SFM, LLC, 19-1526.